993 F.2d 883
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
MOJAVE MILLING PROPERTIES, INC., dba Mojave Mining & Milling
Inc., Plaintiff-Appellant, Cross-Appellee,
v.
CORVAL DEVELOPMENT, INC., Defendant-Appellee, Cross-Appellant.
 Nos. 91-16841, 92-15063.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 13, 1993.
Decided May 7, 1993.
 
 Before SCHROEDER, PREGERSON and D.W. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 FACTS
 
 2
 This case stems from a land sale contract dispute between Mojave Mining, the buyer ("Mojave"), and Corval Development, the seller ("Corval").[1] The underlying issue is whether Mojave was excused from defaulting on a payment owed to Corval pursuant to the sale agreement. The district court granted summary judgment against Mojave on this issue. We affirm.
 
 FACTS
 
 3
 Negotiations for the sale of the Yucca Mill began in August, 1989. The essential terms of the sales contract were agreed upon soon after. The parties, however, went back and forth over Corval's contractual liability for toxic waste that might have been present at the Mill. The parties finally agreed upon the following language, which became § 3.1(d) of the Agreement:
 
 
 4
 If any accounts, claims, reclamation obligations, requirements for removal or treatment of toxic waste (collectively the "liabilities") arise in connection with the sales herein which were to be paid or performed prior to the date hereof and for which the SELLER is liable, the BUYER shall forthwith give written notice with full details of any such liabilities to the SELLER. The SELLER shall either pay, perform, or dispute any such liabilities within the time allowed thereby. If the SELLER disputes any such liabilities, the SELLER shall diligently pursue such disputes to a final decision.... If the SELLER fails to pay, perform or dispute any such liabilities within the time allowed thereby, the BUYER shall be entitled to pay or perform any such liabilities and deduct the amounts so paid in satisfaction ... of such liabilities from the remaining payments due from the BUYER to the SELLER....
 
 
 5
 (emphasis supplied). The Agreement was signed on October 6, 1989 and Mojave began making payments to Corval thereafter.
 
 
 6
 On March 5, 1990, the day before a $300,000 payment was due, Mojave sent a letter to Corval which stated that Mojave had some concerns about "potential" toxic waste liabilities at the Mill. The letter stated that it was not to be construed as notice under the Agreement. Corval responded by letter that Mojave was in default for not making its March 6, 1990 payment and that a "potential" toxic problem was not the sort of liability encompassed by § 3.1(d). Mojave still refused to make its March 5, 1990 payment.
 
 
 7
 Subsequently, Mojave filed this action alleging that: 1) Corval breached the contract by failing to pay for or perform the removal or treatment of pre-existing toxic waste that was discovered at the mill site during escrow as required by § 3.1(d); and 2) Mojave was entitled to withhold payment once Corval refused to fix or to diligently pursue a resolution of the alleged toxic waste problem after Mojave put Corval on notice. Corval filed a cross-claim for breach of contract and brought a motion for summary judgment on Mojave's complaint. The district court granted Corval's motion for summary judgment on the ground that there were no genuine issues of material fact and, as a matter of law, Corval had not breached the Agreement nor was it contractually liable to Mojave for the alleged needed toxic clean-up at the Yucca Mill. Mojave timely appealed.
 
 STANDARD OF REVIEW
 
 8
 Summary judgments are reviewed de novo. We must decide whether, viewing the evidence in the light most favorable to the party against whom summary judgment has been granted, there are any genuine issues of material fact and whether the district court correctly applied the law. Continental Casualty Co. v. City of Richmond, 763 F.2d 1076 (9th Cir.1985). The parties agree that the substantive law of Arizona governs. We review the district court's explication of state law de novo. Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 759 (9th Cir.1992).
 
 DISCUSSION
 I. The Contract
 Section 3.1(d) provides in pertinent part:
 
 9
 If any accounts, claims, reclamation obligations, requirements for removal or treatment of toxic waste (collectively the "liabilities") arise in connection with the sales herein which were to be paid or performed prior to the date hereof and for which the SELLER is liable, the BUYER shall forthwith give written notice with full details of any such liabilities to the SELLER.
 
 
 10
 (emphasis supplied). The dispute regarding Corval's contractual obligations centers on the meaning of the word "requirement." Mojave agrues that one accepted meaning of the word "requirement" is "need." Corval responds that "requirement" means something ordered by an authority. Therefore, Mojave contends that the language used in § 3.1(d) is ambiguous and that there is a genuine issue of material fact about Corval's liability under this section.
 
 
 11
 "The construction of a contract is a question of law where the terms of the agreement are clear and unambiguous." Smith v. Melson Inc., 659 P.2d 1264, 1266 (Ariz.1983). Under Arizona law, contract language is ambiguous only if it is reasonably susceptible to more than one meaning. B.F. Goodrich v. Vinyltech Corp., 711 F.Supp. 1513, 1515 (D.Ariz.1989). In other words, Arizona employs an objective test to determine whether contractual language is ambiguous.
 
 
 12
 The parties dispute over the meaning of the word "requirement" is fruitless. First, both parties correctly define "requirement."[2] Second, these two definitions do not necessarily conflict. The correct connotation to be given to the word "requirement" in § 3.1(d) depends on the surrounding language. Section 3.1(d) refers to "requirements ... which were to be paid or performed prior to the date hereof." This indicates that "requirement" refers to a pre-existing obligation--either as the result of a government order or of an agreement. The clause "prior to the date hereof" indicates that this obligation was incurred or imposed on Corval prior to the sale. Mojave does not contend that Corval had such a pre-existing obligation.
 
 
 13
 Significantly, even if one reads "requirement" as synonymous with "need," in the context of § 3.1(d), the meaning does not change:
 
 
 14
 If any ... need for removal or treatment of toxic waste ... arise in connection with the sales herein which were to be paid or performed prior to the date hereof....
 
 
 15
 Again, the language "which were to be paid or performed prior to the date hereof" clarifies that Corval was only obligated to remove or pay for removal of toxic waste where the "need" arose prior to the signing of the Agreement (prior to the "date hereof") and there was some sort of order or agreement that said Corval was to do the work ("which were to be paid or performed"). Accordingly, the district court correctly found that the terms of § 3.1(d) were not ambiguous.
 
 
 16
 Next we consider Mojave's contention that the district court was required to consider extrinsic evidence despite its finding that the contractual language of § 3.1(d) was free of ambiguity. Although Arizona has weakened the parol evidence rule, the courts' consideration of extrinsic evidence to resolve an ambiguity is still governed by the "plain meaning" rule of interpretation. If the terms of a contract "cannot reasonably be construed in more than one sense, extraneous documents are irrelevant." United Cal. Bank v. Prudential Ins. Co., 681 P.2d 390, 410 (Ariz.App.1983). "The mere fact that the parties disagree as to the meaning of language contained in an agreement is not sufficient to create an ambiguity." Id. In short, the subjective intended definition of the parties is relevant only when there is more than one possible objective (i.e. reasonable) meaning.[3] Therefore, the district court correctly held that it was not required to examine extrinsic evidence to determine whether it created an ambiguity about § 3.1(d).
 
 II. The Letter
 
 17
 Mojave also contends that the district court should not have granted summary judgment to Corval because there is a genuine issue of material fact about whether Mojave gave proper notice to Corval of the alleged toxic waste problem and the liability dispute. The letter stated that:
 
 
 18
 until the foregoing information is confirmed by official "notice" to Corval per the notice provisions set forth in the Agreement, the references in this letter to possible environmental obligations should not be construed as formal notice but only preliminary discussion.
 
 
 19
 Mojave contends that while it may have disclaimed that the letter was notice, there is still a genuine issue about whether it was in fact notice. This argument is completely lacking in merit. The letter stated that "official notice" was required by "the notice provisions set forth in the Agreement." Thus, by Mojave's own interpretation of the notice provisions, an "informal" notice did not suffice. Second, § 3.1(d) provides that a letter of notice shall provide Corval with a time frame for either disputing or accepting liability. No such time frame was specified in the letter. On the evidence presented, there is no genuine issue about whether the letter met the notice requirements of § 3.1(d): it did not.
 
 
 20
 Next, Mojave contends that Corval's written response to Mojave's letter shows that Corval treated the letter as notice and waived its right to formal notice. Corval's response to the letter, however, was not a waiver of formal notice. Rather it was itself notice--of default. We therefore affirm the district court's decision that there was no genuine issue of material fact about whether the March 5, 1990 letter could be construed as notice and as a matter of law the letter did not constitute notice.
 
 
 21
 Because we affirm the district court's ruling that Mojave's letter did not constitute notice, we need not reach Mojave's final argument that it was excused from making the March 6, 1990 payment because Corval failed to diligently pursue a resolution of the problem.
 
 III. Attorneys' Fees
 
 22
 Corval cross-appeals the district court's refusal to grant Corval attorneys' fees. We review the district court's decision for abuse of discretion. Drucker v. O'Brien's Moving & Storage, Inc., 963 F.2d 1171, 1172 (9th Cir.1992). We do not find that the district court abused its discretion in refusing to grant Corval attorneys' fees.
 
 
 23
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Mojave is a mining company and a subsidiary of U.S.O.M.C. Corval is a mining company and a subsidiary of Arizona Silver Corporation
 
 
 [2]
 "Requirement" comes from the Latin and is derivative of the word "inquire." Hence, "require" connotes a request as well as an order or demand. The Oxford English Dictionary defines requirement as: 1) the act of requiring; 2) that which is required or needed; 3) that which is called for or demanded, a condition which must be complied with
 
 
 [3]
 All the cases relied upon by Mojave concern other categories of exceptions to the parol evidence rule and do not speak to the ambiguity exception. Darner Motor Sales v. Universal Underwriters, 682 P.2d 388, 392, 397 (Ariz.1984), deals with the narrow issue of integration. Smith v. Melson, 659 P.2d 1264, 1266, deals with the exception to the parol evidence rule which allows extrinsic evidence to fill a gap in the terms of the contract, i.e. the problem of supplying missing language rather than interpreting existing language. Burkons v. Ticor Title Ins. Co., 813 P.2d 710, 716 (Ariz.1991), in turn, deals with the issue of whether a court could look to extrinsic evidence to see if there was a condition precedent to an agreement when the agreement employed unconditional language